IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

RICHARD L. YOUNG,

       Plaintiff,

vs.                                          No. 07-2327-B/P

TENNESSEE BOARD OF PROBATION
AND PAROLES, et al.,

       Defendants.

---

ORDER ASSESSING $350 CIVIL FILING FEE
ORDER OF DISMISSAL
ORDER DENYING APPOINTMENT OF COUNSEL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

---

On November 16, 2006, Plaintiff Richard L. Young, Tennessee Department of Correction ("TDOC") prisoner number 101867, who is currently an inmate at the Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee, filed a joint pro se complaint pursuant to 42 U.S.C. § 1983, along with four other inmates, accompanied by a motion seeking appointment of counsel. That action was docketed as case no. 06-2784. The Court issued an order on May 3, 2007 severing the cases and this case was opened on the same day. The Clerk shall record the defendants as the Tennessee Board of Probation and Paroles (the "Board") and the individual members of the Board, Charles Traughber, Lynn Duncan,

Larry Hassell, James Austin, Patsy Bruce, Ronnie Cole, and Bill
Dalton.

I.   <u>Assessment of Filing Fee</u>

Under the Prison Litigation Reform Act of 1995 ("PLRA"),
28 U.S.C. § 1915(b), all prisoners bringing a civil action must pay
the full filing fee of $350 required by 28 U.S.C. § 1914(a). The <u>in</u>
<u>forma</u> <u>pauperis</u> statute, 28 U.S.C. § 1915(a), merely provides the
prisoner the opportunity to make a "downpayment" of a partial
filing fee and pay the remainder in installments.

In this case, Plaintiff has properly completed and
submitted an <u>in</u> <u>forma</u> <u>pauperis</u> affidavit containing a certification
by the inmate trust fund officer and an inmate trust fund account
statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that
Plaintiff cooperate fully with prison officials in carrying out
this order. It is further ORDERED that the trust fund officer at
Plaintiff's prison shall calculate a partial initial filing fee
equal to twenty percent (20%) of the greater of the average balance
in or deposits to Plaintiff's trust fund account for the six months
immediately preceding the completion of the affidavit. When the
account contains any funds, the trust fund officer shall collect
them and pay them directly to the Clerk of Court. If the funds in
Plaintiff's account are insufficient to pay the full amount of the
initial partial filing fee, the prison official is instructed to
withdraw all of the funds in Plaintiff's account, and forward them
to the Clerk of Court. On each occasion that funds are subsequently
credited to Plaintiff's account, the prison official shall

2

immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $350.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify Plaintiff's name and the case number on the first page of this order.

If Plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order.

If Plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate

sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at Plaintiff's prison. The Clerk is further ORDERED to forward a copy of this order to the warden of the RMSI to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The Clerk shall not issue process or serve any papers in this case.

II.   Analysis of Plaintiff's Claims

"In November 1983, [Young] pled guilty to first degree murder, aggravated kidnapping and two (2) counts of robbery with a deadly weapon. He received an effective sentence of life imprisonment plus ten years." Young v. State, No. 02C01-9703-CR-00130, 1998 WL 32682 (Tenn. Crim. App. Jan. 30, 1998). The conviction was obtained in the Shelby County, Tennessee, Criminal Court.

According to the complaint and its various attachments, Plaintiff had his first parole hearing on October 13, 2005. Plaintiff's parole prediction score was "9," which placed him in the "low-moderate" risk classification. He also had had no disciplinary infractions in the twelve (12) months prior to the hearing. His institutional security level was minimum trustee, and

4

he was housed at the annex to the Turney Center Industrial Prison in Only, Tennessee. (Docket Entry ("D.E.") 1-2 at 1.)

At Young's parole hearing, Defendant Traughber told him he was denying him for two years due to a perceived high risk to reoffend, and two unidentified Board members concurred. Subsequently, Defendants Austin, Bruce, Cole, and Dalton voted to decline Plaintiff for five (5) years because of the seriousness of the offense. Plaintiff filed an administrative appeal of the decision, pursuant to Tenn. Code Ann. § 40-28-105(d)(11), and, in a letter dated January 20, 2006, Parole Administrator Jack Elder advised Plaintiff that his appeal was denied. The substantive explanation for that denial consisted of the following statement: "Upon reviewing the board file and tape recording of the hearing, your allegation of significant procedural error(s) by the Hearing Official(s) was not substantiated." The letter concluded by stating that "[t]his disposition is final and there is no further appeal recourse available to you on this matter through the Tennessee Board of Probation and Parole." (Id. at 3.) According to the TDOC website, Plaintiff is not eligible for another parole hearing until October, 2010.

Young contends that, as he was convicted prior to April 10, 1985, he is entitled to the benefit of a rule of the Board, in effect at the time, that created a presumption in favor of release on parole. Plaintiff also asserts that the decisions to decline parole on the basis of the seriousness of the offense are inconsistent with the Board's parole release guidelines. Finally,

Young argues that his right to equal protection has been violated by virtue of the fact that the Board has released other inmates, who were convicted of serious crimes and who scored higher on the risk assessment scale used by the Board.

Plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2)  seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B). Plaintiff's complaint is subject to dismissal in its entirety.

Prisoners have no constitutional right to be released on parole before the expiration of their sentences. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979); Inmates of Orient Correctional Inst. v. Ohio State Adult Parole Auth., 929 F.2d 233, 235 (6th Cir. 1991). The relevant statutes provide no expectation of release on parole:

Release on parole is a privilege and not a right, and no inmate convicted shall be granted parole if the board finds that:

(1)  There is a substantial risk that the defendant will not conform to the conditions of the release program;

(2)  The release from custody at the time would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect for the law;

6

(3) The release from custody at the time would have a substantially adverse effect on institutional discipline; or

(4) The defendant's continued correctional treatment, medical care or vocational or other training in the institution will substantially enhance the defendant's capacity to lead a law-abiding life when given release status at a later time.

Tenn. Code Ann. § 40-35-503(b) (emphasis added); see also Tenn. Code Ann. § 40-28-117(a) ("Parole being a privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is reasonable probability that such prisoner, if released, will live and remain at liberty without violating the law, and that the prisoner's release is not incompatible with the welfare of society.").

Because Tennessee's statutory scheme places the decision to grant parole within the complete discretion of the parole board, inmates have no state-created liberty interest in parole. See Seagroves v. Tennessee Bd. of Probation & Parole, 86 F. App'x 45 (6th Cir. 2003); Rowan v. Traughber, 48 F. App'x 489, 490-91 (6th Cir. 2002); Berry v. Traughber, 48 F. App'x 483, 484 (6th Cir. 2002) ("Berry has neither an inherent constitutional right to parole nor a protected liberty interest created by mandatory state parole laws."); Wright v. Trammell, 810 F.2d 589 (6th Cir. 1987) (per curiam) (Tennessee law creates no liberty interest in parole); State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); Grimes v. State,

No. W2004-02897-CCA-R3-PC, 2005 WL 1249060, at *2 (Tenn. Crim. App. May 25, 2005); <u>Davis v. Maples</u>, No. M2002-02564-COA-R3-CV, 2003 WL 22002660, at *4 (Tenn. Ct. App. Aug. 25, 2003); <u>Pipher v. Tennessee Bd. of Parole</u>, No. M2000-01509-COA-R3-CV, 2002 WL 31443204, at *3 (Tenn. Ct. App. Nov. 1, 2002); <u>Kaylor v. Bradley</u>, 912 S.W.2d 728, 733 (Tenn. Ct. App. 1995); <u>Wells v. Tennessee Bd. of Paroles</u>, 909 S.W.2d 826, 828 (Tenn. Ct. App. 1995); <u>see also</u> <u>Sweeton v. Brown</u>, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc) ("After <u>Olim</u> and <u>Inmates</u>, it became clear that procedural statutes and regulations governing parole do not create federal procedural due process rights. . . . The parole authorities in the State of Michigan may have been required to follow their own procedural statutes and regulations on parole as amplified in the consent decree as a matter of <u>state</u> law, but there is not now any viable legal theory by which Michigan state authorities are require to follow such procedural rules as a matter of <u>federal</u> due process.") (emphasis in original). As Tennessee prisoners have no liberty interest in release on parole, they cannot challenge the procedures used to deny parole. <u>Olim v. Wakinekona</u>, 461 U.S. 238, 249-50 (1983); <u>Rowan</u>, 48 F. App'x at 491; <u>Berry</u>, 48 F. App'x at 485; <u>Inmates of Orient Correctional Inst.</u>, 929 F.2d at 237-38; <u>Chilton v. White</u>, No. 2:04-CV-269, 2005 WL 1594574, at *1 (E.D. Tenn. July 6, 2005) ("Absent an inherent constitutional right to parole or a protected liberty interest created by state law, the plaintiff has no due process claim based upon the denial of an earlier parole eligible date.").

Plaintiff also contends he is entitled to the benefit of the Board's former rule 1101-1-1-.06, in effect at the time of his conviction, which provided in part as follows:

> The Board operates under the <u>presumption</u> that each resident who is eligible for parole is a worthy candidate and thus the Board presumes that he <u>will be released</u> on parole when he is first eligible. Before granting or denying parole, the Board shall apply the following factors to each resident to assist it in determining whether such resident will live and remain at liberty without violating the law or the conditions of his parole[.]

<u>Wright v. Trammell</u>, 810 F.2d at 590 (quoting Tenn. Bd. of Parole R. 1100-1-1-.6 (emphasis added by court)). The Sixth Circuit held that that rule created a liberty interest in parole. <u>Mayes v. Trammell</u>, 751 F.2d 175, 178-79 (6th Cir. 1984). Effective April 10, 1985, the Rule was amended to read in pertinent part as follows:

> Before granting or denying parole, the Board shall apply the following factors to each eligible resident to assist it in determining whether such resident will live and remain at liberty without violating the law or the conditions of his parole.

<u>Wright</u>, 810 F.2d at 590-91. The Sixth Circuit held that Tennessee law no longer created a constitutionally protected liberty interest, as "[t]he amended rule eliminated the words from the former rule which granted a constitutionally protected liberty interest." <u>Id.</u> at 591.

According to Plaintiff, the retroactive application of the new rule violates the <u>ex post facto</u> clause of the Tennessee Constitution. (D.E. 1-1 at 9.) This argument is without merit for two reasons. First, a claim that the Board's use of its current rule violates Tennessee law is not cognizable under 42 U.S.C. §

1983, which provides a right of action for violations of the United States Constitution or federal law by persons acting under color of state law. <u>Lugar v. Edmonson Oil Co. Inc.</u>, 457 U.S. 922, 924 (1982); <u>Flagg Bros. Inc. v. Brooks</u>, 436 U.S. 149, 155 (1978); <u>Wagner v. Metro. Nashville Airport Auth.</u>, 772 F.2d 227, 229 (6th Cir. 1985).

Second, the Tennessee Court of Appeals, analyzing the identical claim asserted by Plaintiff under the U.S. and Tennessee Constitutions, has rejected it on the merits:

> Mr. Kaylor insists that the amended regulation can only apply to inmates who committed their crimes after April 10, 1985, and that retroactively applying the regulation violates the Ex Post Facto Clause because refusing to give him the benefit of the regulation's presumption will inflict a greater punishment on him than permitted by the law in existence when he committed his crimes. His claim fails for two reasons. First, it is entirely speculative because he has not alleged that he would have been released earlier under the regulations as they stood in 1984. Second, the presumptions on which he relies were never valid because they were inconsistent with the statute on the same subject.
>
> . . . .
>
> Parole was "a privilege and not a right" according to the parole statutes in existence when Mr. Kaylor committed his crimes. Parole decisions were exclusively within the discretion of the parole board. . . . Thus, inmates like Mr. Kaylor had no absolute right to be paroled at the time Mr. Kaylor committed his offenses. . . .
>
> Administrative regulations cannot be inconsistent with statutes on the same subject. . . . The now repealed regulation, as construed by the United States Court of Appeals for the Sixth Circuit in <u>Hayes v. Trammell</u>, created a presumption that was inconsistent with the parole board's statutory obligation to determine on an individualized, case-by-case basis that an inmate should be released on parole. <u>See State ex rel. Nelson v. Harwood</u>, 183 Tenn. 567, 570-72, 194 S.W.2d 448, 449-50

10

(1946). Accordingly, the regulation, being invalid since before Mr. Kaylor committed his crimes, cannot provide any benefit to Mr. Kaylor or other similarly situated inmates.

<u>Kaylor v. Bradley</u>, 912 S.W.2d 728, 733-34 (Tenn. Ct. App.) (footnotes and citations omitted), <u>perm. app. denied</u> (Tenn. 1995).

The Sixth Circuit has also held that the Board's application of its present rules to prisoners convicted prior to April 10, 1985 does not violate the <u>ex post facto</u> clause. <u>Seagroves v. Tennessee Bd. of Probation & Parole</u>, 86 F. App'x 45, 48 (6th Cir. 2003); <u>Berry v. Traughber</u>, 48 F. App'x 483, 485 (6th Cir. 2002).[1]

Finally, Plaintiff contends that his right to Equal Protection has been violated because the Board has released other inmates who were convicted of serious crimes and who scored higher on the risk assessment scale used by the Board. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." <u>Henry v.</u>

---

[1]      The Sixth Circuit's recent decision in <u>Dyer v. Bowlen</u>, 465 F.3d 280 (6th Cir. 2006), which reversed the denial of a petition pursuant to 28 U.S.C. § 2254 brought by a Tennessee prisoner that presented an <u>ex post facto</u> issue, is not to the contrary. In <u>Dyer</u>, the inmate complained that the Board applied Tenn. Code Ann. § 40-28-117(a) (1998), rather than Tenn. Code Ann. § 40-3614 (1974), which was in effect when he committed his crimes. The Sixth Circuit concluded that the district court failed to address the substance of this claim. <u>Id.</u> at 283, 284. This case is of no assistance to Plaintiff, as he relies on the Board's rules and guidelines rather than on a state statute. "Internal parole guidelines 'are not "laws" for ex post facto purposes because the guidelines do not absolutely restrict parole officers' discretion.'" <u>Michael v. Ghee</u>, 411 F. Supp.2d 813 (N.D. Ohio 2006) (quoting <u>Ruip v. United States</u>, 555 F.2d 1331. 1335-36 (6th Cir. 1977)) (additional citations omitted); <u>see also</u> <u>Berry</u>, 48 F. App'x at 485 ("The new policy is not a law subject to ex post facto analysis as it is more in the nature of a guideline for the Board to use in exercising it discretion and as Berry provided no evidence that the Board lacked the discretion to modify the policy.").

_Metropolitan Sewer Dist._, 922 F.2d 332, 335 (6th Cir. 1990)
(quoting _Johnson v. Morel_, 876 F.2d 477, 479 (5th Cir. 1989) (en
banc )).[2] If the plaintiff is a member of a class that is not
"protected," the plaintiff's class "merits constitutional
protection only insofar as the state actor could have had no
conceivable rational basis for distinguishing it." _Purisch v.
Tennessee Technological Univ._, 76 F.3d 1414, 1424 (6th Cir. 1996).

In this case, the complaint does not allege that
Plaintiff was discriminated against because of his membership in a
protected class. The law is clear that prisoners are not a
protected class for equal protection purposes. _See, e.g._, _Harbin-
Bey v. Rutter_, 420 F.3d 571, 576 (6th Cir. 2005); _Hampton v. Hobbs_,
106 F.3d 1281, 1286 (6th Cir. 1997). Under Tennessee law, "parole
decisions are made on an individual, case-by-case assessment, as
required by statute, not by comparatively ranking offenders."
_Henderson v. Traughber_, No. M2002-02358-COA-R3-CV, 2003 WL
21642765, at *2 (Tenn. Ct. App. July 14, 2003) (citations omitted),
_perm. app. denied_ (Tenn. Dec. 8, 2003). Where the defendant's
decision or action is justified by legitimate, non-discriminatory
grounds, there can be no equal protection violation in the absence
of discriminatory intent. _Village of Arlington Heights v.
Metropolitan Housing Dev. Corp._, 429 U.S. 252, 270 n.21 (1970). The
complaint does not allege that any Defendant intentionally
discriminated against Plaintiff because of his membership in a

---

[2]    Alternatively, a plaintiff may allege that the challenged action
unduly burdens the exercise of a fundamental right. For the reasons previously
stated, however, release on parole is not a fundamental right. _See supra_ p. 6.

protected class. Therefore, Plaintiff has no viable Equal Protection claim based on the release of other inmates. <u>Sherman v. Bredesen</u>, No. 05-6402, slip op. at 4-5 (6th Cir. Oct. 30, 2006); <u>Berry</u>, 48 F. App'x at 485; <u>see also</u> <u>Carnes v. Engler</u>, 76 F. App'x 79, 81 (6th Cir. 2003).[3]

The Supreme Court's decision in <u>Wilkinson v. Dotson</u>, 544 U.S. 74 (2005), does not alter this conclusion. The sole issue in <u>Wilkinson</u> was whether inmates were required to bring their challenges to the constitutionality of state parole procedures in habeas petitions or whether such claims were cognizable in actions pursuant to 42 U.S.C. § 1983. The Supreme Court held that state prisoners could bring challenges to state parole procedures under 42 U.S.C. § 1983. The Supreme Court did not have occasion to consider the merits of the plaintiffs' underlying claims and, in particular, the case did not concern whether any state's laws created a liberty interest in parole. The decision in <u>Wilkinson</u>, therefore, has not provided Young with a viable claim.

The Court therefore DISMISSES the complaint in its entirety, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted. As the case is being dismissed, the motion for appointment of counsel is DENIED.

---

[3]    The complaint does not allege that the Board members who made the decision to deny Plaintiff release on parole also voted on the parole applications of the various other inmates listed in the additional materials submitted by Plaintiff.

III. <u>Appeal Issues</u>

The next issue to be addressed is whether Plaintiff should be allowed to appeal this decision <u>in forma pauperis</u>. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken <u>in forma pauperis</u> if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. <u>Id.</u> Accordingly, it would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, yet has sufficient merit to support an appeal <u>in forma pauperis</u>. <u>See</u> <u>Williams v. Kullman</u>, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff is not taken in good faith and Plaintiff may not proceed on appeal <u>in forma pauperis</u>.

The final matter to be addressed is the assessment of a filing fee if Plaintiff appeals the dismissal of this case.[4] In <u>McGore v. Wrigglesworth</u>, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the

---

[4] Effective April 9, 2006, the appellate filing fee increased from $255 to $455.

14

PLRA. Therefore, Plaintiff is instructed that, if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in <u>McGore</u> and § 1915(b).

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by this plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim.

IT IS SO ORDERED this 29th day of May, 2007.

<u>s/ J. DANIEL BREEN</u>
UNITED STATES DISTRICT JUDGE